UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DARLENE DEZELAN, individually, on behalf of the Cedars-Sinai Medical Center 403(b) Retirement Plan, and on behalf of all similarly situated Plans,<br><br>                        Plaintiff,<br>              vs.<br><br>VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY,<br><br>                        Defendant. | Civil Action No. 3:16-cv-1251<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br>July 26, 2016 |

**COMPLAINT**

Plaintiff Darlene Dezelan, by her attorneys, individually, on behalf of the Cedars-Sinai Medical Center 403(b) Retirement Plan, and on behalf of all other similarly situated employee pension benefit plans covered under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), based on personal knowledge with respect to her own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, alleges the following Complaint.

## I.      INTRODUCTION

1.      This is a class action against Voya Retirement Insurance and Annuity Company ("VRIAC" or "Defendant").

2.      VRIAC sells group annuity contracts to retirement plans. These contracts include what VRIAC labels and markets as "Stable Value Funds" or "SVAs." The SVAs periodically credit a certain amount of interest income to retirement plans and the participants in such plans who invest their retirement plan accounts in SVAs. This income, generally expressed as a percentage of the invested capital, is determined pursuant to the

1

Crediting Rate. The Crediting Rate varies in that in each Crediting Period, VRIAC sets a Crediting Rate for all money in and added to its SVAs in that period.

3.      VRIAC has the sole and exclusive discretion to determine the Crediting Rate for a given Crediting Period. VRIAC sets the Crediting Rate well below the internal rate of return ("IRR") on the Plan's deposits to the SVAs and, therefore, imposes a substantial difference between the two rates. (the "Spread"). Thus, it guarantees a substantial profit for itself through both the retention of Spread and/or the use of the Spread for its own purposes. VRIAC does not disclose to its retirement plan clients and their respective participants the amount of the Spread. Thus, VRIAC collects hundreds of millions of dollars annually in undisclosed compensation from the retirement plans and participants to whom it owes the highest duties known to law and certain statutory disclosure obligations.

## II.      JURISDICTION AND VENUE

4.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

5.      This court has personal jurisdiction over Defendant because it is headquartered and transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). This Court also has personal jurisdiction over Defendant pursuant to Fed. R Civ. P. 4(k)(1)(A) because it would be subject to the jurisdiction of a court of general jurisdiction in Connecticut.

6.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.

§ 1132(e)(2), because some or all of the violations of ERISA occurred in this District and

Defendant resides or may be found in this District. Venue is also proper in this District

pursuant to 28 U.S.C. § 1391 because Defendant resides and does business in this District,

and a substantial part of the events or omissions giving rise to the claims asserted herein

occurred within this District.

### III.      PARTIES

7.      Plaintiff is a resident of Los Angeles, California. Plaintiff is a participant in

the Plan. Plaintiff invests her retirement assets in Defendant's SVA through her Plan. All

retirement plans within the Class are herein referred to as "the Plans."

8.      VRIAC is a legal reserve insurance company authorized under the insurance

laws of New York. Its principal place of business is Windsor, Connecticut.

### IV.      SUBSTANTIVE ALLEGATIONS

9.      Pursuant to its insurance business, Defendant offers and sells to retirement

plans Group Annuity Contracts ("GACs") which include SVAs similarly managed through

Defendant's general investment account ("GIA") and guaranteed separate accounts

("GSA").

10.     The SVAs are offered to ERISA covered Internal Revenue Code ("Code")

Section 401(a) and 403(b) retirement plans.

11.     Defendant provides insurance and related services to the Plans under the

GACs.

12.     Defendant provides the SVAs to the Plans as part of an integrated defined

contribution plan contract under which a number of other critical investment, financial and

recordkeeping services are provided by Defendant.

13.     The SVAs are intended to provide investment income to plan participants through which participant assets grow through interest and additional contributions.

**A.      Defendant Is a Fiduciary.**

**1.       Defendant Is a Fiduciary in Setting Crediting Rates.**

14.     Defendant, through its specialized professionals, developed the GAC terms through which the SVAs are provided to the Plans and their participants.

15.     Participant and Plan deposits to the SVAs accumulate at an interest rate set and reset by Defendant (the "Crediting Rate").

16.     Defendant sets the Gross Crediting Rate (before the deduction of expenses) in its sole discretion, subject only to a minimum guaranteed Crediting Rate which can be as low as 1%.

17.     The Crediting Rate applies to SVA assets until it is reset at the beginning of the next Crediting Period. Defendant sets and resets the Gross Crediting Rate for the SVAs as frequently as quarterly. Accordingly, the Crediting Rate is "guaranteed" for Crediting Periods as short as three months.

18.     Defendant sets and resets the Crediting Rate at a level that is designed to ensure fairly close tracking with the market and its returns on invested assets. Accordingly, Defendant sets the Crediting Rate to transfer substantially all of the investment risk to the Plans and participants.

19.     The SVAs do not specify or require any formula or methodology for determining Crediting Rates, and Defendant does not disclose any actual formula or methodology used for determining Crediting Rates.

20.     Upon information and belief, the cost of the "guarantee" of the Crediting Rate to VRIAC is minimal, and the Plans ultimately bear the investment risks related to the "guarantees."

21.     Defendant reserves to itself, under the GACs, substantial authority to protect its own interests at the expense of the Plans. In particular, Defendant effectively prevents a Plan from terminating a SVA in the event Defendant exercises its discretion to impose an unfavorable Crediting Rate by imposing numerous restrictions.

22.     For example, Defendant reserves to itself the right to delay payments from the GACs or transfers to another investment if it determines, in its sole discretion, that a withdrawal may have an adverse impact on Defendant or its accounts.

23.     Defendant also imposes substantial restrictions and financial penalties on transfers from the SVAs to other investment options. For example, any transfer from the SVAs to a competing investment option must be invested in a non-competing option for a minimum period of time such as, for example, ninety days, or may be subject to substantial financial penalties. Defendant determines in its sole discretion the competing options which include any option which may be invested in assets other than common or preferred stock, such as any money market or bond fund and certain asset allocation or lifestyle funds. Through this restriction, Defendant forces participants who want to transfer out of the SVAs to invest the most low-risk, stable value, portions of their retirement savings in much higher risk equity investments. Defendant reserves to itself the right to impose these restrictions in its sole discretion, when it is economically advantageous to Defendant.

24.     Additionally, Defendant reserves to itself the right to determine the manner in which Plans may withdraw from the SVAs, and exercises that authority to impose

substantial penalties upon participants if an employer terminates a GAC (and, therefore, terminates the SVA which is incorporated into the GAC), which include requiring that participants' retirement assets be paid out over a protracted period of several years, and a punitive withdrawal penalty which is not related to a true economic market value of the termination but instead is designed to force the employer not to terminate the GAC.

25.     Upon information and belief, Defendant does not provide reasonable notice of the change in the Crediting Rate. As alleged above, a Plan cannot reasonably terminate and replace a SVA without also terminating and replacing the GAC as a whole, including all of the critical financial, investment and recordkeeping services necessary to operate a Plan. A wholesale change in all material operations of a Plan such as this requires substantial time as the Plan must fulfill numerous fiduciary, legal and administrative obligations related to those efforts, including hiring a new Plan provider and making the transition away from Defendant. These actions cannot be accomplished in the time between the announcement and imposition of a new unfavorable Crediting Rate. Thus, Plan fiduciaries are effectively precluded from making determinations concerning the reasonableness of the Crediting Rate, and from replacing the GAC with another stable value fund when a Crediting Rate imposed by Defendant is unreasonable.

26.     Defendant has complete discretion in the setting of the Crediting Rate above the guaranteed amount. Accordingly, Defendant, through its management, investment managers and Board of Directors, has the complete and unfettered discretion to determine the Crediting Rates and, therefore, the earnings that are paid out on the SVAs.

27.     Defendant sets its own compensation by using its unfettered discretion to decide the Crediting Rate because it collects the difference between the Crediting Rate and the IRR, and does so without disclosure.

28.     The restrictions and penalties alleged above cause the Plans to be locked into disadvantageous Crediting Rates and GACs. In locking the Plans into the SVAs, over which Defendant retains the authority to establish the Crediting Rates, Defendant acts as a fiduciary in the setting of the SVA Crediting Rate.

**2.     Defendant Is a Fiduciary in Management of Plan Assets Deposited In SVAs.**

29.     The GSAs are insurance company separate accounts under 29 C.F.R. § 2510.3-101(h)(1)(iii), and the assets which the Plans deposit and Defendant holds in the account and income earned thereon are the Plans' assets under ERISA.

30.     Participant allocations to the GSA are received by Defendant and deposited and held by Defendant in Defendant's GSAs, where they are pooled and invested with the other assets in those GSAs and with GIA assets.

31.     Defendant's discretionary handling and management of those GSA assets makes Defendant a fiduciary of the Plans with regard to those assets.

32.     In keeping the Spread earned on the GSA assets, Defendant does not directly allocate the investment returns of the GSAs to the Plans, but instead manages the Plans' assets solely for its own behalf.

33.     Defendant reserves to itself the right in its sole discretion to determine the GSA reserve levels and whether such reserves are held in the GSA or its GIA. By setting the amount of and withholding the reserves that are carved out from GSA assets, Defendant reduces the GSA assets that are available for the SVAs through the Crediting Rate.

34.     Defendant reserves to itself the right to transfer and in fact transfers funds between the GSA and the GIA, at its sole discretion, and exercises fiduciary authority in determining the amount of transfers between the GSA and GIA and in executing such transfers.

35.     Because the GSA funds are Plan assets, the transfer of assets from the GSAs to the GIA is the transfer of the Plan's assets to the GIA, and those GSA assets held in the GIA are also Plan assets.

36.     These GSA assets, and other participant contributions held and invested in the GIA, are pooled and invested by Defendant with Defendant's other financial assets.

37.     Defendant, through the GIA, holds and invests Plan assets deposited to the GSA.

38.     The assets Defendant holds in the GIA which relate to the GSA are Plan assets under ERISA, and Defendant is a fiduciary to the Plans in its discretionary handling and management of those Plan assets.

**B.      Defendant Exercises Fiduciary Authority To Set Its Own Unreasonable Compensation in Violation of ERISA.**

39.     The GACs are the Plans' assets, and the assets held under the SVAs are the Plans' assets.

40.     Defendant is a fiduciary concerning the GACs and management of the Plan's assets held under the GACs, including those assets transferred between the GSA and the GIA.

41.     Plan fiduciaries may not set their own compensation under ERISA.

42.     Defendant imposes charges which are directly deducted from the SVAs, which sharply reduces the Gross Crediting Rate to a Net Crediting Rate.

43.     Moreover, Defendant, through its management and Board of Directors, has the complete and unfettered discretion to determine the SVA Crediting Rate and the allocation of the GSA assets between the GSAs and the GIA and, therefore, it controls the amount it earns on the assets the Plans invest in the GSAs and GIA ("Income").

44.     For the GIA, including GSA assets held in the GIA, Income includes the difference between the actual earnings on investments made by Defendant in the GIA and the Crediting Rate paid to participants for that Crediting Period.

45.     For the GSA, Income includes the difference between the actual GSA earnings on investments made by Defendant and the Crediting Rate paid to participants for that Crediting Period.

46.     In addition to its substantial fees, Defendant pays itself Income which is intended to cover investment management and administrative expenses, expense for minimal risk and substantial profit.

47.     Defendant earns direct and indirect compensation from the Income earned from Plan deposits to the SVAs.

48.     The Plan's auditor computed the earnings on Plan assets held in the GSA in 2014 to be 6.1%, without regard to any additional earnings which may have been made on GSA assets held in the GIA, while only a 2.9 % Crediting Rate was paid on the GSAs to the Plans.

49.     Therefore, in addition to all of the expenses it was paid as alleged above, Defendant had complete discretionary control over the undisclosed GSA Spread of as much as 3.2%.

50.     The discretionary retention and use of undisclosed, unauthorized and excessive GSA Spread compensation within the GSA results in Defendant, itself and through its affiliates, having discretionary authority over the level of compensation it receives from the GSA.

51.     For Plan assets held directly in the GIA rather than through a GSA, including GSA assets held in the GIA, Defendant similarly directly sets and controls the Spread under the GIA and therefore directly controls its own compensation.

52.     Because Defendant in its sole fiduciary discretion sets the SVA Crediting Rates, and because the Income is profit to Defendant, in exercising its fiduciary discretion to set the Income, Defendant exercises fiduciary discretion to set its own fees and profits related to the Plans' deposits into the SVAs.

53.     Defendant does not disclose to Plan participants or fiduciaries the Income compensation it pays itself, which reduces the investment returns on Plan assets. Defendant's non-disclosure of the amount of the Income gave it a competitive advantage over other Plan service providers who disclosed all of their fees.

**C.     Defendant is a Party in Interest Receiving Undisclosed, Unreasonable Compensation Prohibited by ERISA.**

54.     Defendant is a party in interest to the Plans, and any compensation it receives from the Plans in connection with services provided to the Plans is prohibited by ERISA unless it is reasonable.

55.     For GACs in effect as of and after July 1, 2012, Defendant is a "covered service provider" under 29 C.F.R. § 2550.408b-2(c)(1)(iii)(C) because it provides insurance and recordkeeping services to the Plans through the GACs, including its insurance guarantees of principal of the SVAs through the GACs.

10

56.     In connection with its insurance and recordkeeping services, Defendant reasonably expects to receive and, in fact, receives indirect compensation in connection with receipt of the plan deposits to the SVAs for which insurance and recordkeeping services are provided.

57.     Defendant is also a "covered service provider" under 29 C.F.R. § 2550.408b-2(c)(1)(iii)(A) because it provides fiduciary services to the Plans by virtue of managing SVA assets through the GSAs and through the GIAs, and reasonably expects to receive and receives direct compensation in connection with its investment of the plan deposits, which are Plan assets, to the SVAs, for which fiduciary services are provided.

58.     Defendant pays itself and its affiliates Income which is intended to cover investment management and administrative expenses, expenses for risk and substantial profit.

59.     This Income constitutes indirect compensation as defined in 29 C.F.R. § 2550.408b-2(c)(1)(viii)(B)(2) in connection to Defendant's insurance and recordkeeping services provided under the GACs, and direct compensation as defined in 29 C.F.R. § 2550.408b-2(c)(1)(viii)(B)(1) in connection with its fiduciary services under the GACs.

60.     Compensation from a plan under ERISA is not reasonable unless it is disclosed prior to entering into the contract for services.

61.     In order for its compensation to be reasonable, Defendant was required to disclose to each Plan's "responsible plan fiduciary" the amount of the Income on the later of July 1, 2012, or the date the Plan purchased the GAC. For GACs in effect prior to July 1, 2012, Defendant was required to disclose the compensation it received in connection with the services provided to the Plans under the DOL regulations then in effect.

62.     Defendant failed to adequately disclose to the Plans its Income, and its

receipt was therefore prohibited by ERISA as *per* se unreasonable.

## V.     CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of herself and a class defined as follows (the

"Class"):

All ERISA covered employee pension benefit plans whose plan assets were
invested in Voya Retirement Insurance and Annuity Company's Group Annuity Contract
Stable Value Funds within the six years prior to, on or after July 26, 2016.

64.     The members of the Class are so numerous that joinder of all members is

impractical. Upon information and belief, the Class includes hundreds of retirement plans.

65.     Plaintiff's claims are typical of the claims of the members of the Class

because Plaintiff's claims, and the claims of all Class members, arise out of the same

conduct, policies and practices of Defendant as alleged herein, and all members of the Class

are similarly affected by Defendant's wrongful conduct.

66.     There are questions of law and fact common to the Class and these questions

predominate over questions affecting only individual Class members. Common legal and

factual questions include, but are not limited to:

   a.  Whether Defendant is a fiduciary of the Plans;

   b.  Whether Defendant is a party in interest with respect to the Plans;

   c.  Whether Defendant breached its fiduciary duties in failing to
     comply with ERISA as set forth above;

   d.  Whether Defendant's acts as alleged above breached ERISA's
     prohibited transaction rules;

   e.  Whether monies received and retained by Defendant were Plan
     assets;

        f.       Whether an affirmative defense to a prohibited transaction claim applies and can be satisfied by Defendant; and

        g.      Whether Defendant's acts proximately caused losses to the Plans and, if so, the appropriate relief to which Plaintiff, on behalf of the Plan and the Class, is entitled.

67.    Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

68.    Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

69.    In the alternative, certification under Rule 23(b)(2) is warranted because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

70.    In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions

affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for Violations of
### ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C)

71.    Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

72.    ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), provides that a fiduciary shall not cause a plan to engage in a transaction if it knows that the transaction constitutes the payment of direct or indirect compensation in the furnishing of services by a party in interest to a plan.

73.    Defendant is a party in interest under ERISA in that it provided services to each of the Plans. ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

74.    Defendant is also a covered service provider.

75.    Defendant received compensation in the form of Income and a specific expense charge in exchange for the services it provided to the Plans pursuant to the GACs and, therefore the GACs violate this section of ERISA.

76.    The only exception to the prohibition of such compensation is if it was for services necessary for the operation of a plan and such compensation was reasonable. ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2). Additionally, transactions after June 30, 2012 must meet the specific requirements 29 C.F.R. § 2550.408b-2.

77.    The compensation paid to Defendant was not reasonable under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2), for the following reasons.

78.     First, as alleged above, Defendant failed to make disclosures concerning such Income compensation.

79.     As a result of Defendant's failure to make such disclosures, the Income is, as a matter of law, unreasonable compensation within the meaning of ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2).

80.     Second, the Income and expense compensation was excessive and unreasonable as a matter of fact in relation to the value of the services provided with regard to the SVAs in that the Spread exceeded the agreed expenses.

81.     When compared to the expenses related to competing funds, the total compensation for the SVAs was excessive.

82.     Plaintiff and the Class have been damaged in the amount of the Income Defendant took in connection with the SVAs.

83.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

84.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to Plaintiff and the Class, including but not limited to the disgorgement by Defendant of its undisclosed, excessive, and unreasonable compensation.

**SECOND CLAIM FOR RELIEF**
**ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for Violations of**
**ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1)**

85.     Plaintiff re-alleges and incorporates herein by reference all prior allegations

15

of the Complaint.

86.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), provides that a fiduciary shall not deal with plan assets in his own interest or for his own account.

87.     In setting and resetting the Crediting Rates applicable to the SVAs and setting the amount of and keeping the Income, and in determining the level of its own compensation, Defendant deals with plan assets in its own interest or for its own account.

88.     Plaintiff and the Class have been damaged in the amount of the Income Defendant took in connection with the SVAs.

89.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

90.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

91.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

92.     Plaintiff and the Class are entitled to recover the Income and other appropriate relief as a result of these violations.

## THIRD CLAIM FOR RELIEF
### ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for Violations of
### ERISA § 404, 29 U.S.C. § 1104

93.     Plaintiff re-alleges and incorporates herein by reference all prior allegations of the Complaint.

94.     In setting and resetting the Crediting Rates applicable to the SVAs, and setting the amount of and keeping the Income, and in determining its own compensation, Defendant has breached its fiduciary duties to the Plans and their participants.

95.     Plaintiff and the Class have been damaged in the amount of the Income Defendant took in connection with the SVAs.

96.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

97.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further

provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

98.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

99.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

100.    Plaintiff and the Class are entitled to recover the Income and other appropriate relief as a result of these violations.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court award the following relief:

A.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

B.      Order declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA, with respect to the Plans;

C.      Award, declare or otherwise provide Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper and such appropriate equitable relief as the Court may order, including damages, an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy;

D.      Award to Plaintiff attorneys' fees and expenses as provided by the common

18

fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

      E.      Award pre-judgment and post-judgment interest.


Dated: July 26, 2016               Respectfully submitted,


                             *s/ Robert A. Izard*
                     Robert A. Izard (ct01601)
                     Craig A. Raabe (ct04116)
                     Christopher M. Barrett
                     IZARD, KINDALL & RAABE, LLP
                     29 South Main Street, Suite 305
                     West Hartford, CT 06107
                     Telephone: (860) 493-6292
                     Facsimile: (860) 493-6290
                     rizard@ikrlaw.com
                     craabe@ikrlaw.com
                     cbarrett@ikrlaw.com


                     Gregory Y. Porter, *pro hac vice* to be filed
                     Ryan T. Jenny, *pro hac vice* to be filed
                     BAILEY & GLASSER LLP
                     1054 31st Street, NW
                     Suite 230
                     Washington, DC 20007
                     Telephone: (202) 463-2101
                     Facsimile: (202) 463-2103
                     gporter@baileyglasser.com
                     rjenny@baileyglasser.com

                     ***Attorneys for Plaintiff***